IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSE GARCIA,

      Petitioner,

v.                                                Civ. No. 14-cv-01161 JCH/GBW

J. WRIGLEY and GARY KING,
*Attorney General of the State of New Mexico*,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (*doc. 1*), and Respondents' Answer and accompanying motion to dismiss (*doc. 8*).  Having thoroughly reviewed the pleadings and the record before the Court, I find Petitioner's claims to be meritless, and recommend dismissing the petition with prejudice.

I.      **BACKGROUND & PROCEDURAL HISTORY**

      A.  **The Underlying Criminal Case**

On August 9, 2007, a jury found Petitioner guilty of second-degree murder and tampering with evidence in connection with the fatal shooting of his wife, Melody Garcia.  *Doc. 8*, Ex. C at 2.  On August 29, 2007, a Judgment, Sentence, and Commitment was filed against Petitioner in the Tenth Judicial District Court, Quay County.  *Doc. 8*, Ex. A.  Petitioner was judged guilty of murder in the second degree in violation of N.M.

Stat. Ann. § 30-2-1 (1978), with a firearm enhancement (Count I), and of fourth-degree tampering with evidence in violation of N.M. Stat. Ann. § 30-22-5 (1978) (Count II). *Id.* at 1.  He was sentenced to a total of seventeen and a half years' incarceration. *Id.* at 2.

Petitioner filed a Notice of Appeal on September 28, 2007. *Doc. 8*, Ex. B.  He argued: (1) that the evidence was insufficient to support a conviction for second-degree murder; (2) ineffective assistance of counsel due to the numerous substitutions of trial counsel; (3) ineffective assistance of counsel based on counsel's self-defense strategy where Petitioner insisted on his innocence; and (4) irregularities with the police investigation. *Doc. 8*, Ex. C at 15-16.

The Court of Appeals of New Mexico affirmed the judgment, concluding that (1) substantial evidence supported the conviction for second-degree murder, (2) Petitioner failed to show any prejudice due to any alleged failure of counsel, and (3) Petitioner waived his argument concerning police practices by failing to raise it at trial. *See generally doc. 8*, Ex. F.  Petitioner petitioned the New Mexico Supreme Court for a writ of certiorari, but was unsuccessful. *Doc. 8*, Exs. G, H.

**B.  Petitioner's State Habeas Proceedings**

Petitioner filed his initial state habeas petition in state district court on April 9, 2009. *Doc. 8*, Ex. J.  He raised the following grounds: (1) ineffective assistance of counsel; (2) improper introduction of hearsay testimony; (3) the opinion on appeal was

based on an unreasonable determination of the facts, (4) *Brady*[1] violations, and (5) actual innocence.  *Doc. 8*, Ex. J at 1.

On September 7, 2011, Petitioner, through counsel, filed a supplemental memorandum in support of his writ of habeas corpus, in which he argued that trial counsel was ineffective for presenting a theory of the case that conflicted with Petitioner's position that he was actually innocent.  *Doc. 8*, Ex. L.  After an evidentiary hearing held on June 14, 2012, the state district court dismissed the petition on July 12, 2012.  *Doc. 8*, Ex. N.

Petitioner filed a petition for writ of certiorari in the Supreme Court of New Mexico.  *Doc. 8*, Ex. O.  The Supreme Court of New Mexico granted the petition and ordered briefing on the issue of whether trial counsel was ineffective for failing to assert Petitioner's defense of actual innocence.  *Doc. 8*, Exs. R, S.  After briefing was complete, the Supreme Court of New Mexico quashed the writ of certiorari "as improvidently granted."  *Doc. 8*, Ex. Y.

On June 16, 2014, Petitioner filed a second petition for writ of habeas corpus, in which he argued that counsel was ineffective for: (1) failing to challenge an allegedly falsified police report; (2) failing to challenge purportedly "tainted" evidence; (3) failing to secure testimony from witnesses favorable to the defense; and (4) failure to challenge evidence that could not be linked to Petitioner through fingerprints, DNA, or gun

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

powder residue.  *Doc. 8*, Ex. AA.  Petitioner further argued that there was a conflict due

to his trial counsel's admission in open court that "she was against Petitioner's wishes."

*Id.*

      In addition to Petitioner's claims for ineffective assistance of counsel, he

requested habeas relief based on the court's admission of "tainted evidence,"

prosecutorial misconduct, and violation of due process because counsel's theory of the

case prevented Petitioner from testifying to his innocence.  *Doc. 8*, Ex. AA.

      The state district Court dismissed Plaintiff's petition on July 24, 2014, *doc. 8*, Ex.

BB, and again, on reconsideration, on August 20, 2014, *doc. 8*, Ex. DD.  Petitioner's

Petition for Writ of Certiorari in the Supreme Court of New Mexico, *doc. 8*, Ex. EE, was

likewise denied, *doc. 8*, Ex. FF.

## II.    PETITIONER'S FEDERAL HABEAS PETITION

      Petitioner filed his federal habeas petition on December 29, 2014.  *Doc. 1.*  He sets

forth the following arguments as grounds for relief.

1. The trial court improperly admitted evidence that was collected by a single
   police officer and was, therefore, "tainted."  Petitioner contends that at least two
   officers should have been present at all times in order to ensure that evidence
   was not added or removed from the crime scene.

2. The district attorney engaged in prosecutorial misconduct by:
   a) Falsely stating that Petitioner had the victim's blood on his clothes; and
   b) Calling a witness whose testimony had been coached by law enforcement.

3. Petitioner was afforded ineffective assistance of counsel due to:
   a) Counsel's failure to challenge an allegedly falsified police report and false
      testimony at trial;

      b)  Counsel's failure to challenge allegedly "tainted" evidence at trial;

      c)  Counsel's failure to secure testimony from witnesses on Petitioner's behalf;

      d)  Counsel's failure to show that the State's evidence could not be linked to the Petitioner through fingerprints, DNA, or gun powder residue;

      e)  Counsel's admission that "she was against Petitioner's wishes in open court."

4.  Petitioner's due process rights were violated because the self-defense theory counsel presented at trial prevented him from testifying as to his actual innocence.

*See generally doc. 1.*

Defendants concede that Plaintiff has exhausted all of his claims.  *Doc. 8* at 6.  The Court will therefore proceed to consider the merits of the petition.

## III.   STANDARD OF REVIEW

A federal court can only grant the petition for writ of habeas corpus of a person in state custody if the state court adjudication of the petitioner's claims on the merits[2] resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The threshold question under § 2254(d)(1) is whether the law, as developed by the United States Supreme Court, is clearly established.  *House v. Hatch*, 527 F.3d 1010,

---

[2] A state court's summary dismissal of a claim is presumed to be an adjudication "on the merits" even if the court provided no reasoning to support its decision.  *Harrington*, 131 S. Ct. 770, 785 (211).  This presumption may be overcome only if "there is reason to think some other explanation for the state court's decision is more likely."  *Id*.  A number of Petitioner's claims were summarily dismissed. Petitioner has not argued, nor presented evidence indicating, that the trial court and New Mexico Supreme Court decisions on these claims are not adjudications on the merits.  I must therefore presume that they are.

1015 (10th Cir. 2008). This determination is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017 ("[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law") (internal quotation marks omitted). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id.* at 1016. If Supreme Court precedent "gives no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citation omitted).

If the court determines that there is relevant, clearly established federal law, it must consider whether the state court decisions are "contrary to" or "unreasonable applications of" that law. A state court decision is contrary to clearly established federal law if the state court (1) "applies a rule that contradicts the governing law set forth in Supreme Court cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *House*, 527 F.3d at 1018 (citing *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)). A state court decision is an unreasonable application of clearly established federal law if (1) "it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts," or (2) it "unreasonably extends, or unreasonably refuses to extend, a legal principle from

6

Supreme Court precedent to a new context where it should apply." *Id*. at 1018.  An

unreasonable application of law is "more than an incorrect application of federal law."

*Id*. at 1019.

In order to succeed under § 2254(d)(2), a petitioner must show that the state

court's adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2).  "Section 2254(d)(2) . . . is a daunting standard—

one that will be satisfied in relatively few cases." *Byrd v. Workman*, 645 F.3d 1159, 1172

(10th Cir. 2011) (internal quotation marks omitted).  "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849

(2010).  Rather, it is "whe[n] the state courts plainly misapprehend or misstate the

record in making their findings, and the misapprehension goes to a material factual

issue that is central to petitioner's claim, that misapprehension can fatally undermine

the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*,

645 F.3d at 1171-72.  When reviewing the application, the federal court must be "highly

deferential" to the rulings of the state court.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

IV.   ANALYSIS

A. <u>Tainted Evidence</u>

Petitioner claims that the trial court improperly admitted "tainted evidence." *Doc. 1*, Ex. 1A at 1.  Specifically, he contends that "at least 2 officers need [to] be present in [the] collection of evidence at all times."  *Id.*  Petitioner avers that because "only one police officer collected evidence" from the crime scene, evidence could have been "added or removed to make [him] look guilty."  *Id.*

"[A] State may not knowingly use false evidence . . . to obtain a tainted conviction . . . ."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  "[C]riminal convictions obtained by presentation of known false evidence . . . violate[] the due process guarantees of the Fourteenth Amendment."  *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009).  The same is true "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  *Napue*, 360 U.S. at 269.  Because Petitioner has not established that the alleged "tainted" evidence was false, much less that the state knowingly introduced false evidence, I recommend that the Court dismiss this claim.

To begin, even assuming there were support in the record for Petitioner's statement that only one officer was present during the collection of evidence, he does not proceed to explain *what* evidence was tainted, nor precisely how it was supposedly falsified.  At most, Petitioner makes conclusory assertions about the reliability of the

evidence collected, just like the habeas petitioner in *Smallwood v. Martin*, 525 F. App'x 669 (10th Cir. 2013).  In that case, the Tenth Circuit concluded that petitioner failed to state a due process violation where he made a "cryptic assertion" of corruption among police officers, but "le[ft] the court to make the connection" as to how this could have impacted the evidence against [him]." *Id.* at 674.  Similarly, Petitioner's nebulous claim that the evidence against *could* have been altered does not constitute a due process violation.  He "must establish the prosecution *knowingly* obtained the false [evidence] or failed to correct [it] . . . ." *Roberts v. Ward*, 176 F.3d 489, at *6 (10th Cir. Mar. 25, 1999) (unpublished) (emphasis added).  For this reason alone, Petitioner's claim of tainted evidence could be dismissed.

Furthermore, the state court record appears to contradict Petitioner's assertion that only one officer was present for the collection of evidence, at least with respect to some of the state's most critical evidence.  For example, Kurt Griego, a deputy sheriff for the Santa Rosa Sheriff's Department, testified at Petitioner's trial that he assisted with the search of the murder scene by conducting a grid search of the exterior of Petitioner's residence along with one of the state police investigators.  Trial Tr. vol. I, 84:18-22; 98:8-100:12.  Deputy Griego was thus not alone in searching the crime scene for evidence.  He testified: "We were spaced about six foot [sic] apart as we were moving forward looking on the ground, looking at the areas around it." *Id.* at 100:1-4.  While this was taking place, Deputy Griego approached a window well on the side of

Petitioner's house that was approximately two feet deep and was covered with metal sheet. *Id.* at 100:5-101:25. Under the metal sheet, Deputy Griego found blood-covered items, including floor mats and a gun. *Id.* He testified that he "immediately told the state police investigator [what he had found,] . . . and she came and looked." *Id.* at 102:3-5. Deputy Griego's testimony that he came upon and collected items covered in blood—including the murder weapon—with another law enforcement official only a few feet away belies Petitioner's assertion of improperly collected evidence.

Further still, even assuming that only one officer collected evidence and that this somehow raises questions as to the evidence's reliability, "[t]he potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012). "The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry*, 132 S. Ct. at 723. It is "[o]nly when evidence is so extremely unfair that its admission violates fundamental conceptions of justice" that the courts have "imposed a constraint tied to the Due Process Clause." *Id.* (quotations omitted).

Petitioner has not established that the state knowingly submitted false evidence, nor shown how the supposedly "tainted" evidence was so unreliable as to render "his

trial, as a whole, . . . fundamentally unfair." *Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991). He had all the usual constitutional safeguards available to him throughout the course of his trial, including cross-examination, the right to counsel, and the state's rules of evidence. *See Perry*, 132 S. Ct. at 723. In fact, his counsel did attempt to cast doubt upon the collection of evidence by cross-examining Deputy Griego regarding whether he kept track of who was going in and out of Petitioner's house and whether the door to the house was locked. Trial Tr. vol. I, 120:15-122:4.

For the foregoing reasons, I recommend concluding that there is no basis for finding that Petitioner's trial was rendered fundamentally unfair due to the presentation of allegedly tainted evidence.

**B. <u>Prosecutorial Misconduct</u>**

Petitioner next argues that the district attorney who prosecuted his case engaged in prosecutorial misconduct by (1) falsely claiming that Petitioner had the victim's blood on his clothes, and (2) presenting the testimony of a witness who had been "coached" by law enforcement.

"Prosecutorial misconduct violates a defendant's due process if it infects the trial with unfairness and denies the defendant's right to a fair trial." *United States v. Anaya*, 727 F.3d 1043, 1052 (10th Cir. 2013) (internal quotations omitted). "To determine whether a trial is fundamentally unfair, we examine the entire proceedings, including

the strength of the evidence against the petitioner . . . ." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (internal quotations omitted).

> **1. *The District Attorney's allegedly false statement that Petitioner had the victim's blood on his clothes***

Petitioner first contends that the district attorney prosecuting his case "lied in open court saying Petitioner had blood from [the] victim on his clothes." *Doc. 1*, Ex. 1A. He argues that this statement constituted prosecutorial misconduct because the district attorney argued facts not in evidence.

I recommend dismissing this claim because there was factual support for the district attorney's statement in the record. A prosecutor commits no error by "comment[ing] on and draw[ing] reasonable inferences from evidence presented at trial." *Thornburg v. Mullin*, 422 F.3d 1113, 1131 (10th Cir. 2005). At trial, Deputy Sheriff Kurt Griego testified to Petitioner's appearance when he first arrived at the crime scene in response to a welfare check. Trial Tr. vol. I, 92:13-21. He stated that he saw "what appeared . . . to be blood on [Petitioner's] left wrist, a speck of blood and then it also appeared that he had a smudge . . . on his left forearm . . . and then on his shirt right above here was like a red smudge, which appeared to be blood. Also there were like little specks of what appeared . . . to be flesh on his clothing." *Id.* Because there was testimony that Petitioner had the victim's blood on his clothes, the district attorney committed no error in stating so during argument.

12

Further, even if the prosecutor had committed misconduct, Petitioner has not shown that his statement "render[ed] the trial fundamentally unfair." *Id.* In fact, the presence of blood on Petitioner's clothing was entirely consistent with the self-defense theory defense counsel presented at trial. Thus, any misstatement on this point by the district attorney would not have deprived petitioner of a fair trial. *See Bland*, 459 F.3d at 1028 (holding prosecutor's statement did not render trial fundamentally unfair where it was consistent with the defense's theory).

### 2. The District Attorney called witnesses whose testimony Petitioner contends was coached by law enforcement

Petitioner also argues prosecutorial misconduct because the district attorney allegedly called a "witness who was coached by law enforcement on what to testify to against Petitioner." *Doc. 1*, Ex. 1A. However, he "provides nothing in support of this claim other than [t]his bare allegation," and "[t]here is no factual basis" for his statement in the record. *Johnson v. Vaughn*, No. 10-301, 2013 WL 1788538, at *10 (N.D. Okla. Apr. 26, 2013); *see also Argeanas v. Collins*, 996 F.2d 305, at *2 (5th Cir. June 18, 1993) (unpublished) (finding habeas petitioner's argument "meritless because it is not supported by the record"). Petitioner does not even state which witness he believes was improperly coached, much less what testimony was supposedly false. I therefore recommend finding that the state court did not unreasonably dismiss this claim.

### C.  Ineffective Assistance of Counsel

Finally, Petitioner makes a number of allegations regarding ineffective assistance of counsel.  It is clearly established federal law that the Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  For Petitioner to succeed on his claims of ineffective assistance of counsel, he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88.  A court "may address the performance and prejudice components in any order, but need not address both if [Petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

For counsel's performance to fall outside the bounds of professional reasonableness, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  The question under this analysis is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788.  However, when reviewing a claim of ineffectiveness of counsel that has already been dismissed by the state court, the burden of demonstrating ineffectiveness is even heavier—"[t]he standards created by *Strickland* and § 2254(d) are both highly

14

deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S.

Ct. at 788 (internal citations and quotations omitted).  Ultimately, "[t]he question under

§ 2254(d) is not whether counsel's actions were reasonable, but whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

To satisfy the second prong, Petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  A court "may

address the performance and prejudice components in any order, but need not address

both if [Petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d

1283, 1292–93 (10th Cir. 1998).

### 1.   *Counsel's failure to challenge allegedly falsified evidence and testimony at trial*

Petitioner argues that his trial counsel failed to challenge the state's presentation

of: (1) a falsified police report, (2) false testimony, and (3) "tainted" evidence.  Because

these claims are conclusory and without factual support in the record, I recommend

finding them to be without merit.

First, as Defendants point out, Petitioner "has not identified or further elaborated

as to what police report [or testimony] he believes was fabricated . . . ." *Doc. 8* at 12.

The petition is simply devoid of any explanation beyond conclusory statements as to

counsel's ineffectiveness on these two claims.  Next, contrary to Petitioner's assertion,

his trial counsel did challenge the evidence that Petitioner claims was "tainted."  As noted above, counsel attempted to cast doubt upon the collection of evidence by cross-examining Deputy Griego about who had access to the crime scene and how the area was secured.  Trial Tr. vol. I, 120:15-122:4.  Counsel also elicited testimony that there was a relationship between individuals in the Sheriff's department and the victim such that the murder investigation could have been biased.  Trial Tr. vol. I, 112:24-115:2.  Whether or not to challenge the state's evidence further was a matter of strategy that fell within counsel's judgment.  As the Supreme Court has recognized, "[t]here are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, and the Court should "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and presume that counsel's conduct is sound strategy."  *United States v. Page*, 480 F. App'x 902, 906 (10th Cir. 2012) (internal quotations omitted).  Petitioner's trial counsel could have easily worried that challenging the state's evidence would backfire.  For example, by calling attention to the evidence, defense counsel could have unintentionally afforded the prosecution an opportunity to bolster the reliability of their evidence or to highlight the strengths of their case.  Further, defense counsel could have risked jeopardizing her credibility with the jury or the judge by challenging the reliability of evidence when there did not appear to be a justifiable basis for doing so.

16

For the foregoing reasons, the Court cannot say that the state court unreasonably found that Petitioner's counsel's actions constituted effective representation.

### 2. *Counsel's failure to call witnesses favorable to Petitioner*

Petitioner also contends that "counsel refused to secure testimony from Petitioner's witnesses because it went against her plan for trial . . . ." *Doc. 1*, Ex. 1A. "[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008); *see also United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981). "Counsel must be allowed leeway in prioritizing the evidence and witnesses she puts on." *Hooks v. Workman*, 689 F.3d 1148, 1190 (10th Cir. 2012). "Trial counsel does not act unreasonably in failing to call every conceivable witness that might testify on a defendant's behalf." *Hooks v. Workman*, 689 F.3d 1148, 1190 (10th Cir. 2012). In fact, even the failure to call witnesses for the defense does not, in itself, establish that counsel was constitutionally ineffective. *See Parker v. Jones*, 423 F. App'x 824, 828 (10th Cir. 2011).

The Court cannot even begin to evaluate whether counsel's decision not to call certain witnesses was ineffective because Petitioner never names any witness who would have testified on his behalf, nor does he suggest what his or her testimony would have been. I therefore recommend rejecting this claim of ineffective assistance of counsel.

### 3. Counsel's failure to show that the State's evidence could not be linked to the Petitioner through forensic evidence

In Petitioner's next ground for relief, he argues that trial counsel was ineffective because she did not present evidence or testimony demonstrating that the prosecution's evidence "could not be linked to Petitioner by fingerprints or DNA or powder residue to gun." *Doc. 1*, Ex. 1A. Once again, there is no apparent factual basis for Petitioner's statement in the record. At trial, the state did link its evidence to Petitioner. Deanna Lankford, a DNA analyst, testified that the victim's blood was found on the clothing discovered at Petitioner's residence. Trial Tr., vol. II, 191:23-192:2, 201:9-216-:16. She also noted that some of the items found at the scene had DNA profiles consistent with Petitioner. *Id.* at 210:20-212:17. Additionally, there was no reason for Petitioner's counsel to challenge his connection to the evidence. Defense counsel presented a theory of self-defense and therefore did not contest that Petitioner did in fact shoot the victim, only that he was justified in doing so.

For the foregoing reasons, the state court did not unreasonably dismiss this claim.

18

### 4. *Counsel's statement that she pursued a defense strategy with which Petitioner did not agree*

Petitioner argues that there was a "conflict of counsel" because "counsel admitted she was against Petitioner's wishes in open court."[3]  *Doc. 1*, Ex. 1A.  Although it is unclear precisely what claim Petitioner is attempting to bring, the Court interprets it as a claim that counsel was ineffective for trying Petitioner's case based on a theory that he acted in self-defense rather than arguing that Petitioner was actually innocent.

At trial, Petitioner wished to present a "theory of the case . . . that while [he] was passed out from drinking, someone came into the house, robbed the house, and killed Ms. Garcia." *Doc. 8*, Ex. F at 7.  Instead, trial counsel insisted on pursuing a theory of self-defense.  Petitioner argued that this constituted ineffective assistance of counsel.  On both direct appeal and in his collateral proceedings, Petitioner urged the courts to apply the standard set forth in *State v. Carter*, 14 P.3d 426 (Kan. 2000).  In that case, the Supreme Court of Kansas relied on *United States v. Cronic*, 446 U.S. 648 (1984), which was issued on the same day as *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Cronic*, "the Supreme Court held that in certain circumstances ineffective assistance of counsel may be presumed." *Carter*, 14 P.3d at 435.  The Supreme Court of Kansas subsequently concluded in *Carter* that the actions of a criminal defendant's counsel in pursuing a guilt-based defense in a trial for first-degree murder (counsel attempted to direct the

---

[3] Petitioner's statement that "counsel admitted she was against Petitioner's wishes in open court" seems to refer to an evidentiary hearing that was held on Petitioner's initial state petition for writ of habeas corpus on June 14, 2012, at which Petitioner's trial counsel testified.  *See doc. 8*, Ex. N.

jurors toward a lesser felony-murder conviction) was prejudicial per se because counsel "deliberately overr[ode the defendant's] plea of not guilty." *Id.* at 429, 440.

On appeal, the Court of Appeals of New Mexico rejected Petitioner's request to apply *Cronic* and instead employed the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which required him to establish prejudice. *Ex. 8*, Ex. N at 6-8. The Court of Appeals concluded that Petitioner had "not demonstrated that he was prejudiced by the claimed ineffectiveness, since he has not shown that the jury would have had a reasonable doubt as to his guilty had this line of defense [sleeping through the murder] been pursued." *Id.* at 8.

I recommend finding that the Court of Appeals New Mexico's resolution of this claim was not contrary to, or involved an unreasonable application of, clearly established federal law. Subsequent Supreme Court decisions—as well as a subsequent opinions from the Supreme Court of Kansas -- have called *Carter* into serious doubt. *See Edgar v. Kansas*, 283 P.3d 152, (2012) ("[T]here is uncertainty regarding whether *Carter*'s rationale and perhaps its holding remain valid in light of two United States Supreme Court decisions filed after *Carter*"—*Bell v. Cone*, 535 U.S. 685 (2002), and *Florida v. Nixon*, 543 U.S. 175 (2004)). *Nixon*, in particular, is illustrative here. In that case, the Supreme Court held that defense counsel's failure to obtain a defendant's express consent to a strategy that conceded the defendant's guilt and instead focused on the penalty phase of a capital trial was not per se ineffective. The Supreme Court declined to assume

prejudice under these circumstances, concluding that "[a] presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." *Id.* at 179.

In light of the Supreme Court precedent following *Cronic*, I recommend finding that the state court did not act contrary to clearly established law by applying *Strickland* to this claim and requiring Petitioner to make a showing of prejudice.

In applying *Stickland* to Petitioner's case, the Court of Appeals of New Mexico and the state district court both concluded that the actions of Petitioner's counsel in pursuing a self-defense theory in lieu of complete noninvolvement were not prejudicial to his case. *Doc. 8*, Exs. F, N. The Court of Appeals noted the "significant amount of physical and other evidence tying Defendant . . . to the murder," including testimony presented at trial that Petitioner had blood on his clothing and that he and his wife had been fighting the night before, not to mention the "[b]lood-stained clothing . . . and the gun that was later determined to be the murder weapon were found hidden behind a board in Defendant's basement." *Doc. 8*, Ex. F at 8. The undersigned agrees with the New Mexico Court of Appeals which concluded that:

> It strains credulity to argue that a robber would have killed Ms. Garcia outside in the driveway and then crept back in to the house to hide the gun and the other evidence in Defendant's basement, driven Ms. Garcia's body out to a field in her own minivan and then returned to the crime scene in order to put the vehicle back in Defendant's driveway, take the time to cover up the blood stain in the driveway with dirt, and somehow

spattered Defendant with blood and tissue while he was inside passed out on the couch.

*Id.*  Consequently, the court held that Petitioner had not demonstrated that he was prejudiced by counsel's strategy.  *Id.*

In view of the plethora of evidence against Petitioner and the apparent absurdity of his proposed defensive theory, the state court was not unreasonable in concluding that Petitioner was not prejudiced. Accordingly, I recommend that the Court dismiss this claim.

### 5.  *Counsel's pursuit of a self-defense theory prevented Petitioner from testifying on his own behalf*

Finally, Petitioner raises the closely related, yet distinct, argument that he was deprived of his constitutional right to testify on his own behalf.  He claims that "it [would have] hurt his case to testify on his behalf on innocence when his councel [sic] is testifying on self-defence [sic] in court."  *Doc. 1*, Ex. 1A.  Petitioner maintains his innocence and argues that he "could not testify on something that did not happen"—i.e. that he shot his wife in self-defense.  *Id.*

Although Petitioner casts this claim as a due process violation, the Tenth Circuit has analyzed claims that counsel prevented a defendant from testifying as claims of ineffective assistance of counsel that require the criminal defendant to show prejudice. *See Cannon v. Mullin*, 383 F.3d 1152, 1170-1172 (10th Cir. 2004).  Thus, for the reasons set forth in the preceding section, I recommend finding that the state court did not

22

unreasonably conclude that Petitioner was not prejudiced by not testifying at his trial.

As such, I recommend that the Court dismiss this claim as well.[4]

## IV.  CONCLUSION

As set forth above, I recommend finding that none of Petitioner's alleged

grounds for relief have merit, and that the Court dismiss the petition, in its entirety,

with prejudice.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

[4] It is also worth noting that the state trial court found that Petitioner was, in fact, "given an opportunity to testify and chose not to testify."  *Doc. 8*, Ex. N at 2.

23